## OSBORNE *v.* CHICAGO & N. W. RY. Co.

### (*Circuit Court, S. D. Iowa, C. D.*   November 9, 1891.)

1. **CARRIERS—INTERSTATE COMMERCE LAW—LONG AND SHORT HAULS—JOINT TARIFF RATES.**
    A railroad company cannot justify itself in charging a greater compensation for a shorter than for a longer haul, under substantially similar conditions, contrary to the provisions of the interstate commerce law, (Act Cong. Feb. 4, 1887, § 4,) on the ground that the rate is fixed by a joint tariff agreement with other roads.

2. **SAME—COMPUTATION OF RATES.**
    Nor can it do so because the result comes about by reason of the selection of different points on the line as a basis for computing rates, so as to charge one rate over one part of the road and a different rate over another part.

3. **SAME—POWERS OF COMMISSION.**
    Under the interstate commerce law the power of determining whether a railroad company is relieved from the operation of the long and short haul clause lies solely with the interstate commerce commission; and in an action for damages in a federal court for a violation of that clause, when no authority from the commission is shown, the company cannot claim that it was justified in so doing by reason of the existence of a secret cut rate among competing roads, whereby a large part of the traffic naturally tributary to it was diverted.

4. **SAME—"SIMILAR CIRCUMSTANCES AND CONDITIONS"—PROVINCE OF JURY.**
    Whether the "circumstances and conditions" under which a railroad company has charged a greater compensation for a shorter than for a longer haul over the same line were "substantially similar," within the meaning of the fourth section of the interstate commerce law, is a question for the jury.

5. **SAME—MEASURE OF DAMAGES.**
    In an action by a shipper against a railroad company for charging a greater compensation for a shorter than for a longer haul, in violation of section 4 of the interstate commerce law, the measure of damages is the excess in the rate charged for the shorter haul over that for the longer haul, multiplied by the number of hundred pounds shipped by the plaintiff.

6. **SAME—DAMAGES—WHO LIABLE—ACTION OF TORT.**
    As the right of action given by the law is one for damages, as for a tort, any railroad company which makes the overcharge is liable for the full amount of the dam-

ages, notwithstanding that it has shared the illegal freight with another road under a joint tariff agreement.

7. SAME—INTEREST—PROVINCE OF JURY.

It is the province of the jury, under the act, to determine whether interest shall be allowed on the amount of the overcharge which they have found.

At Law. Action for damages for violation of the long and short haul clause of the interstate commerce law.

*C. C. & C. L. Nourse*, for plaintiff.

*W. C. Goudy* and *Hubbard & Dawley*, for defendant.

SHIRAS, J., (*charging jury orally*.) The issues presented in the case on trial before you arise under the provisions of the act of congress passed February 4, 1887, and commonly known as the "Interstate Commerce Law." As you know, the congress of the United States, for the purpose of regulating the business carried on by the common carriers of persons and property by means of railways, or by a combination of railways and water travel, has passed this act, which regulates, in certain particulars, the carrying on of the passenger and freight business that exists between the different states and territories of the United States. The law, by its provisions, applies to interstate commerce; that is, commerce that is carried on between the states and territories of the United States. Section 2 of this act in substance prohibits the charging or collecting from any person or persons a greater or a less compensation for services rendered in the transportation of passengers or property than is charged or collected from others for the transportation of similar property, under substantially similar circumstances. Section 3 of this act makes it unlawful for any common carrier to make or give any undue or unreasonable preference or advantage to any person, company, firm, corporation, or locality over others, or to any particular description of traffic. Section 4 of this act in substance makes it unlawful for any common carrier to charge or receive any greater compensation in the aggregate for the transportation of a like kind of property, under substantially similar circumstances, for a shorter than for a longer distance over the same line, in the same direction, the shorter being included in the longer distance, it being provided, however, that, upon application to the commission appointed under the provisions of this act, such commission may authorize the carrier to charge less for the longer than for the shorter distance, and in this way relieve the carrier from the operation of the provisions of section 4 of this act.

In the case now under consideration the plaintiff claims that the defendant company violated the provisions of this act, and particularly the fourth section thereof, in that the company required him to pay a larger sum for the transportation of certain grain, to-wit, corn and oats, from the town of Scranton, a station on the defendant's line of railway in the state of Iowa, to the city of Chicago, Ill., than the company was then charging for shipping the same kind of grain from Blair and other points in the state of Nebraska to Chicago, the latter being the longer distance. In the schedule attached to the petition the date of each shipment made by the plaintiff is set forth, with the number of pounds shipped, and

the rate charged, to-wit, 18 cents per hundred pounds, and the answer admits the statements thus made to be correct. On behalf of the plaintiff, it is claimed that the rate thus charged him was greater than that in force over the line of defendant's road upon shipments made from Blair and other Nebraska points, and plaintiff has introduced evidence tending to show the rates charged from Blair and other points in Nebraska, and the excess thereof over the rates charged to plaintiff for shipment of the like kind of grain from Scranton to Chicago. On behalf of defendant, it is denied that the rates charged for the transportation of grain from the points named in Nebraska in fact exceeded that charged to plaintiff upon the shipments from Scranton, and defendant has introduced evidence tending to show the rates in force at the different times included in the controversy, and further claims that the rates in force from Blair and other points in Nebraska were the result of a joint tariff adopted by the Fremont, Elkhorn & Missouri Valley Railway Company and the Sioux City & Pacific Railway Company and the defendant railway company, and further pleads that the circumstances in existence in Nebraska were dissimilar from those existing in Iowa at the time the shipments in question were made, because there existed upon certain lines of railway running to St. Louis, Mo., and Beardstown, Ill., and thence connecting with lines reaching the eastern seaboard, a secret cut rate upon grain shipments, which resulted in diverting from the defendant's line running through Iowa to Chicago a large part of the business which properly belonged to it, the same being sent from the points in Nebraska over the southern lines, and that it was to meet the competition thus created, that the so-called Nebraska tariff was put in force.

So far as the matter of the rates from Blair and other points in Nebraska to Chicago being established by means of joint tariff arrangements between the defendant company and its connecting lines extending into Nebraska, that will not defeat the plaintiff's right of recovery, if the facts show that the defendant company was charging a greater sum for the like service, at the same time, and under the like circumstances, for a shorter than a longer haul in the same direction, over the same line on which it was carrying the grain shipped from Nebraska, under the rates fixed by the joint tariff. What I mean to say is that if, from the evidence in this case and the instructions which shall be further given you by the court, you shall find that the Chicago & Northwestern Railway Company had, by the entering into a joint tariff with the Fremont, Elkhorn & Missouri Valley Railroad Company and the Sioux City & Pacific Railroad Company, aided to put in operation tariff rates, whereby corn and oats could be shipped from Blair and other points in Nebraska, under the like circumstances and conditions as the corn and oats shipped from points in Iowa, through Iowa, to the city of Chicago, and that by the doing thereof a larger sum was charged for a shorter haul than for a longer haul over the same line in the same direction, then the Chicago & Northwestern Railway Company, by joining in that tariff, and by aiding in putting it in operation, has rendered itself liable to be called to

account by any one who has suffered damage by reason of the Chicago & Northwestern Railway Company's charging that person a larger sum for the shorter than for the longer haul; in other words, companies cannot escape the duty and obligation that is placed upon them by the provisions of the interstate commerce law by entering into joint tariffs. Railroads have the right to enter into these joint tariff arrangements. The business of the country could not be carried on, probably, at least, not with any success, unless it was done, and they have a perfect right to do it; but when they do do it, the duty and obligation is on them to observe the provisions of the interstate commerce law in making and putting into operation these joint rates. It is just as much a violation of the law to charge a larger sum for a shorter than for a longer haul, under substantially similar circumstances, if it is done by the operation of a joint tariff, as it would be if it was done by the operation of a single tariff by a single road.

Again, it appears in evidence that, in making out the various tariffs or schedules of rates which have been put in operation from time to time, different points upon the defendant road have been taken, as I understand the testimony of the witnesses, as the basis used in establishing the rates. By way of illustration: They will figure from a certain point, like East Clinton, on the Mississippi. They will take that as a basis, or they will take Chicago as a basis, for figuring on. They may take Turner Junction as a basis for figuring on, or they may take Rochelle as a basis for figuring on. Now, that is a matter for the railway companies to decide for themselves, for their convenience in making out the different schedules of rates. But, whatever basis or whatever point they may take as a basis for establishing rates, the duty and obligation is upon them that they shall not, by this means, evade the provisions of the law. They cannot, by shipping to some point arbitrarily fixed by themselves, by naming the points where they shall cause their cars to be billed to, make a reduction by charging a rate to that point, and from there another rate to another point,—they cannot in that way escape the consequences of the result of that arrangement, if it puts an undue burden upon any shipper. By way of illustration: Here is the Chicago & Northwestern Railway, that runs from Missouri Valley, through to Chicago, and through Turner Junction and Rochelle, we will assume. Now, then, if the Chicago & Northwestern Railway Company, in making out its tariffs, takes Turner Junction, or Rochelle, or any other point on the way to Chicago, as a point to figure from, it may do that; but it cannot, by doing that, justify itself in charging shippers in Iowa a greater sum for taking produce through to Chicago than it charges other parties shipping from Nebraska; that is to say, the duty and obligation, as I have already said to you, is on them not to make any unjust discrimination, or give any undue preference, to shipments made from special points or localities, or any undue preference to the shipments of one individual over another, nor of one kind of business over another. The general theory of the interstate commerce law is that, as near as it can be done, all localities and all

individuals substantially similarly situated, shipping freight over the same line of road in the same direction, under substantially similar circumstances, shall have the same or properly proportioned rates; in other words, there must be no undue preference given to one individual over another, or one locality over another. It is just as much a violation of the law to do that by any method of adopting different points, and billing cars to one point, and then to another point, on the line, as it would be a violation of the law to simply charge a greater sum for a less service of hauling from one point to another.

The plaintiff sets forth his cause of action in two counts in the petition. In both counts he charges that on certain dates that are named in the accounts that are attached to the petition he forwarded certain grain (corn and oats) from Scranton, a station upon the line of the Chicago & Northwestern Railway, through to Chicago, and that he was charged at that time a rate greater than the rate which the railway company was giving to its patrons or to others at Blair and other points in Nebraska, a point which is at a distance greater than is Scranton from the terminal point, Chicago. Now, as I understand it, the question that you have to determine, under the evidence in the case, is whether that statement is true. Is it true that, upon any one or more of the shipments that are set forth in the schedule annexed to the petition, the plaintiff was required to pay a greater sum than was being charged at that time by the defendant, the Chicago & Northwestern Railway Company, for performing the like service for the transportation of other grain of the same kind (corn and oats) from points in Nebraska, over the same line, in the same direction, passing through Scranton to the city of Chicago? Evidence has been introduced in the case upon which the court has been asked to submit to the jury for your determination, as a matter of fact, whether the defendant railway company was not justified in making the reduction of rates, by reason of the fact that it appeared, as it is claimed under the evidence, that there had been what was called a "secret cut rate" put in operation in Nebraska, which affected business upon the line of the Fremont, Elkhorn & Missouri Valley and the Chicago & Northwestern Railways; the result of this better rate being to cause quite a large portion of the business that would naturally be tributary to the Chicago & Northwestern line to go south, by way of St. Louis and Beardstown, and in that way, through St. Louis and these southern points, to the eastern seaboard. Under the ruling of the court upon the question of law, although a rate of that kind may have existed, it is the view of the court that that question cannot be determined by this court and jury. The consideration of questions of that kind—of the right of the railway company to be excused from the duty and obligation that is placed upon it by the fourth section of the interstate commerce law—is, by the express terms of the law itself, conferred upon the interstate commerce commission. As you know, there is a body of commissioners provided for by this interstate commerce act, and the fourth section of this act, by its express terms, in a proviso that is therein contained, places upon the commission the duty, and gives them the authority, to investigate.

and determine whether there are such facts and circumstances surrounding a railroad at a given time as would justify the commission in authorizing the railway company to charge a greater sum for a shorter than for a longer haul over the same line, in the same direction, under otherwise substantially similar circumstances. In the view that the court takes of it, this court and jury cannot determine that question, which, by the law, the commission are authorized to determine. Whether the railway company was justified by a cut rate, making what was called in argument "illegitimate competition," and circumstances of that kind which grow out of the handling and management of the railroad business of the country, by other competing lines, and its effect upon the business of the defendant company, in the judgment of the court, is a question that cannot be submitted to you. Questions of that kind are for the judgment and determination of the board of commissioners appointed under this act, and the courts and juries, when they are called to act upon particular cases arising under this act, where it is claimed that the law has been violated, are only authorized to determine the question whether, in the service rendered, the character of the property, its conveyance, and other facts which inhere in the carrying of the freight upon the particular line which is charged with the wrong-doing, there existed dissimilar circumstances and conditions, relieving the company from the charge of collecting a larger rate for the shorter haul over the same line, in the same direction, and under otherwise substantially similar circumstances and conditions. Now, then, if the railway company had been authorized by the commission to do that, then they could plead and prove that fact, and it would then be the duty of the court to instruct the jury that that would justify the railway company in making the larger rate for the shorter distance; but no such action has been taken by the interstate commission. They have not been called upon to act, and they have not authorized the railway company to charge a greater sum for the shorter than for the longer distance.

Under the circumstances I have detailed before you, as I view it, this court and jury cannot authorize the railway company to make such charge, or justify it after it has been done. There is no evidence in this case that the railway commission has ever passed upon the question, or authorized the railway company to charge a greater sum for the shorter than for the longer distance; therefore, the question comes down to this: Does the evidence satisfy you that at the time when the Chicago & Northwestern Railway Company transported the oats and corn set forth in the schedules attached to the petition from Scranton, Iowa, to Chicago, Ill., it had in force and operation a tariff rate whereby it did, either by itself, or in conjunction with the other roads that have been named in your hearing, transport the like produce (corn and oats) from points in Nebraska over this same line, the Chicago & Northwestern Railway, in the same direction, to Chicago, Ill., at a rate less than it was charging for the like services to the plaintiff? Now, if it did do that,—if there was any reason sufficient to influence the Chicago & Northwestern to put a lower rate in operation in Nebraska,—it had a

right to do it, and had a right to fix this rate in competition with any secret rate to which it might be subjected in Nebraska, either directly or indirectly, through the operations of the competition that was brought to bear upon the roads connecting with the defendant line, the Fremont, Elkhorn & Missouri Valley and the Sioux City & Pacific; but if, by reason of that competition, or for any other reason, the Chicago & Northwestern Company did enter into a joint arrangement with these companies, in which it fixed this lower rate, then, under the law, it was charged with the duty of not charging a greater sum to Iowa shippers for the shipping of the like produce—the like grain—over its line of road to Chicago, under substantially similar circumstances and conditions, because that was the shorter distance. And if it were in fact proven that it did charge a greater sum to Iowa shippers on the like produce, and for the like service, it would establish a violation of the fourth clause of the interstate commerce law, because it would be charging a greater sum for hauling a shorter, than for hauling a longer distance, under substantially similar circumstances.

Now then, gentlemen, it is for you to determine, under the evidence in this case, whether or no the produce that was forwarded by the plaintiff from Scranton was of the same kind that defendant forwarded under its tariff from Blair, Neb. The court can take judicial notice of distances, and instruct you that the distance is greater from Blair, Neb., to Illinois than from Scranton, Iowa, to Illinois, and it is for you to determine, if there is any dispute in the evidence, whether the Nebraska grain passed over the same line (the Chicago & Northwestern) that the freight did in going from Scranton, Iowa, to Chicago, Ill. Is there anything, then, in the evidence, as it is submitted to you, that would justify you in finding that there was any dissimilarity in the circumstances and conditions under which the defendant railway company forwarded the freight of the plaintiff from Scranton, Iowa, and under which it forwarded the produce, (corn and oats,) coming within this schedule or tariff of rates when it received the same from these connecting lines in Nebraska? As I have already said to you, the law, under this fourth section of the statute, requires that for similar services, rendered under similar circumstances, it shall not charge a greater sum for a shorter than for a longer haul over the same line, and in the same direction. Has the plaintiff, upon whom is the burden of proof, satisfied you, by a fair preponderance of the evidence, that as to any one or more of these shipments that are set forth in the petition the defendant company did in fact charge a greater sum for hauling from Scranton the oats and produce of plaintiff than it charged for the like services from Blair, Neb., at the same time? If so, and if there is nothing in the evidence of the circumstances surrounding the transportation of this grain over the line of defendant's road that would justify defendant in making a larger rate from Scranton than from Nebraska points, then the company has charged a greater sum for making a shorter than a longer haul of the like property, under like circumstances, and in so doing has violated the interstate commerce law.

There is a dispute between the parties as to the rates that were charged as to some of these shipments. That is a matter for you to determine under the evidence; and if you find that, in fact, the Chicago & Northwestern Railway Company did not make any discrimination, and was not charging the plaintiff for conveying his property from Scranton a larger rate from Scranton, Iowa, to Chicago, than it charged at the same time from Blair, and other points in Nebraska, to Chicago, then the plaintiff has failed to make out his case, and your verdict must be for the defendant. If, on the other hand, you find on this issue for the plaintiff,—in other words, if you find that the Chicago & Northwestern Railway Company did charge more for the transportation from Scranton to Chicago than it was charging at the same time for the transportation of like property, under like circumstances, from Blair and other points in Nebraska,—that would justify you in finding upon that issue for the plaintiff, and we then come to the rule of damages.

The rule of damages under both counts of the petition is the same: First ascertain what the rate was that was fixed for the transportation from Blair, and other points in Nebraska; that is, the rate per hundred pounds. Then find what the rate was that was in fact charged per hundred pounds to the plaintiff for forwarding the oats and corn from Scranton to Chicago. The difference between these two, if there is any, is the damage per hundred pounds that was caused to the plaintiff. Now, the schedules attached to the petition show the number of hundred pounds that is claimed to have been transported, and it is admitted in the answer that these were transported as shown, so there is no dispute on that point. Take the number of hundred pounds that you find were transported, and take the difference, if any, between these rates per hundred pounds, and, by mere multiplication of one by the other, you will find the amount of damage. It may be required that you make this computation more than once, because it is claimed that the difference was less at times than at other times, and that is for you to determine under the evidence. Take the number of hundred pounds of these shipments, as they are set forth in the schedules attached to the petition. Ascertain the rates fixed by the tariff that you find defendant at that time had in force from Nebraska. Take the difference between that and the rate actually charged the plaintiff, if there is any, and the difference is the damage per hundred pounds that has been caused the plaintiff. You understand, gentlemen, that it is the damage to the plaintiff that is to be considered. It is not a question of how much the defendant railway company may have received. When joint rates are made, the shipper has nothing to do with that; he has no control over that. His privilege is to deliver his freight that is to be transported to the railway company, and, if it comes under the operation of a joint rate, it is not a matter of any moment, as between him and the railway company that handles his freight, what particular share or portion of the rate that is actually paid on the shipment any particular railroad received. If two or more railway companies, entering into a joint tariff arrangement, shall so carry it out as to cause a damage to the shipper,—as, by way of illustration,

charging him under the joint tariff three cents or five cents more than they ought to have charged him,—it is not a question in which the shipper is interested, when he sues to recover, to know what particular division may have been made of the five cents thus illegally charged. The shipper would have a right to look to all of the railways, or to any one of them, which had aided in committing the wrong, by receiving from him a larger rate than he ought to have been charged. If, by the effect of a joint tariff of rates the Chicago & Northwestern Company aided in putting in operation, the plaintiff was charged for shipping his grain from Scranton five, or six, or one cent more than they ought to have charged him, the plaintiff is entitled to recover in this action the amount of the overcharges he has paid, regardless of what division may have been made, or whether there was any division, between the different companies putting the joint rate into operation; because it is not a suit to recover back the amount the defendant company may have received, but it is an action sounding in tort for damages, wherein the shipper seeks to recover the damages claimed to have been caused him by charging an illegal rate. The unlawful overcharge is the element on which the claim for damages is based.

Under the law, it is within your province to determine whether or not interest shall or shall not be paid on the amount of overcharge, if you find any. If you find that the plaintiff has been overcharged upon particular shipments, it is not a matter in which the law determines whether interest shall be given or not. In some cases founded on breach of contract, the parties may be entitled to recover interest; but in cases for damages sounding in tort, (and this is a case of that kind,) it is within the province of the jury to award interest or not. If, in order to fairly compensate the plaintiff, in your judgment, he should receive 6 per cent. interest, it is within your power to award it.